IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | CIVIL ACTION NO. MDL 875 |
| LIABILITY LITIGATION (No. VI) | : | |
| ————————————————X | | |
| This Document Relates To: | : | MISC. ACTION No. 09-MC-103 |
| | : | (Oil Rig Cases) |
| (See Exhibit A - attached case list) | : | |
| ————————————————X | | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                    May    14,    2010

**I.      Introduction**

Presently before the Court are Defendants "Combined Motion and Brief of Union Carbide Corporation to Hold Dr. Jay T. Segarra in Civil Contempt" (09-MC-103, Doc. 49) ("Motion for Contempt"),  Plaintiffs response (09-MC-103, Doc. 69), and Defendant's reply, (09-MC-103, Doc. 70).   Also before the Court are Plaintiffs' "Motion to Dismiss" (09-MC-103, Doc. 100) and Defendant "Union Carbide Corporation's Combined (1) Response to Plaintiffs' Motion to Dismiss, (2) Motion for Leave to File Bill of Costs and (3) Brief on the Impact of Plaintiffs' Motion to Dismiss on Union Carbide Corporation's [Motion for Contempt]," (09-MC-103, Doc. 102).

On March 15, 2010, the seven remaining Plaintiffs who rely upon the medical opinion of Dr. Jay T. Segarra filed a motion to voluntarily dismiss their cases with prejudice.  (09-MC-103, Docs. 99, 100.) On March 19, 2010, Defendant Union Carbide Corporation (alternatively "Union Carbide" or "Defendant") filed a response to Plaintiffs' motion to dismiss and a brief discussing the impact of Plaintiffs' motion upon its Motion for Contempt, which was filed on August 22, 2010.  *See* 09-

1

MC-103, Docs. 101, 102. While Defendant does not oppose dismissal of Plaintiffs' cases, they request that the Court first consider its Motion for Contempt in that has been fully briefed since September 2009 and involves issues closely related to its opposition to Plaintiffs' motion to dismiss. *See* 09-MC-103, Doc. 102 at 19-20.

Plaintiffs raise no serious objection to this request. *See* 09-MC-103, Docs. 104, 105. We see it as sensible, and accept it as a basis upon which to proceed.[1] For the reasons we set out within, we will **DENY** Defendant's Motion for Contempt. We will, however, **GRANT** Defendant's Motion for Leave to File a Bill of Costs in part and **DENY** that Motion in part. We withhold any specific ruling granting Plaintiffs' Motion to Dismiss pending our assessment of the reasonableness of the costs and fees reflected in Defendant's Bill of Costs, as well as to give Plaintiffs' and Plaintiffs' counsel an opportunity to consider whether they in fact choose to pursue the Motion to Dismiss.

## II.    Factual and Procedural Background

On December 19, 2005, Dr. Jay T. Segarra was served with a subpoena duces tecum issued by the Clerk of the Court for the Eastern District of Pennsylvania in connection with MDL 875 ("Subpoena"). That Subpoena was the subject of Judge Robreno's February 24, 2009 Order and

---

[1] In undertaking our analysis, however, we understand of course that Plaintiffs' motion to dismiss will effectively end Dr. Segarra's role in these cases and that Defendant now seeks only attorneys' fees and costs in connection with its Motion, as the wide range of relief originally requested is no longer relevant. *Compare* 09-MC-103, Doc. 107 (highlighting portion of Motion for Contempt seeking attorney fees and costs from Plaintiffs' counsel and Dr. Segarra's counsel as well as the imposition of "sanctions and the assessment of fees and costs" against Dr. Segarra) *with* 09-MC-103, Doc. 49 (reflecting that Defendant's Motion for Contempt sought order from this Court holding Dr. Segarra in civil contempt, imposing appropriate sanctions, concluding spoliation of evidence occurred justifying a negative inference, permitting additional discovery of persons having information related to the materials subject to the subpoena at issue, dismissal of Plaintiffs' cases, exclusion of Dr. Segarra testimony at trial, and the imposition of costs and fees).

Memorandum Opinion.[2]  *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151 (E.D. Pa. Feb.

24, 2009).   By that Order, Dr. Segarra was directed "to produce all documents and information

relating to diagnosing reports or opinions for Plaintiffs with claims currently pending in MDL 875

within 20 days." *Id.* at 158.   On March 6, 2009, Plaintiffs' filed a motion for clarification, or in the

alternative, reconsideration of Judge Robreno's Order.   (01-MD-875, Doc. 5839.)   Defendant

followed with a motion for reconsideration of the remedy provided in the Order on March 12, 2009.

(01-MD-875, Doc. 5886.) Judge Robreno determined that Plaintiffs' and Defendant's motions were

moot, noting that the individuals on whose behalf a *Daubert* challenge to Dr. Segarra had been

advanced were no longer parties to the litigation.   (Order Den. Def.'s Mot. for Recons., May 29,

2009, 01-MD-875, Doc. 6275).   Defendants were instructed to file motions to compel Dr. Segarra's

compliance with the Subpoena in individual cases.

On June 4, 2009, Union Carbide filed a "Renewed Combined Motion and Brief to Compel

---

[2] Although the Subpoena which forms the basis of Defendant's Motion for Contempt was served upon Dr. Segarra in 2005, we do not consider the period prior to February 2009 to significantly impact our analysis.   On December 23, 2005, Dr. Segarra's attorney, Matthew G. Mestayer, objected to the Subpoena in a letter to Defendants.   (09-MC-103, Doc. 49 at Ex. 2.) He asserted that it was overly broad, unduly burdensome, vague, and that the requested information was privileged and confidential.   (*Id.*)   The Federal Rules of Civil Procedure provide individuals three options to avoid or limit compliance with a subpoena, including a timely written objection to the party who served the subpoena. *See* FED. R. CIV. PRO. 45(c).   When such an objection is timely filed, "the serving party may move the issuing court for an order compelling production or inspection." *Id.* at 45(c)(2)(B)(ii).   Defendants filed a motion to compel on August 10, 2006.

We are unable to conclude that Dr. Segarra was violating the demands of the Subpoena after he filed a timely objection, absent a ruling upon Defendant's first motion to compel.   (01-MD-875, Doc. 4521); *see Pamida Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002). The motion was held in abeyance by the Honorable Judge James T. Giles in 2007, pending plaintiffs' compliance with Administrative Order No. 12, and was not ruled upon until Judge Robreno issued his February 24, 2009 Order. *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151 (E.D. Pa. Feb. 24, 2009).   We, therefore, consider February 2009 to mark the proper starting point for our analysis.

Dr. Jay T. Segarra's Production of Documents and Response to Subpoena."[3]   (09-63215, Doc. 9.)
On June 25, 2009, this Magistrate Judge ordered Dr. Segarra to produce certain documents and
materials responsive to Paragraphs 1-2, 9, 11-12, 20-21, and 23 of the Subpoena, to the extent that
these materials were related to his screening or litigation practice and not protected by the
"consulting expert" privilege of Federal Rule of Civil Procedure 26(b)(4)(B).   (09-MC-103, Doc.
2) (alternatively "Segarra Production Order" or "Order").   The Segarra Production Order also
compelled Dr. Segarra to produce a list of those lawyers that retained Dr. Segarra as a consulting
expert, as well as the number of "persons for whom he was consulted by each lawyer."   *Id.*   In
addition, the documents and materials within Paragraph 8, 13-14, 18-19, and 26-27 of the Subpoena
were to be produced in full.   *Id.*   All "materials and documents to be produced [were] to be produced
**on or before July 8, 2009**."   *Id.* (emphasis in original.)

On July 8, 2009, the Court amended the Segarra Production Order such as to recognize that
all responsive materials in Dr. Segarra's control were to be produced by July 17, 2009.   (09-MC-
103, Doc. 15.)   Plaintiffs' were also required to provide Defendant an affidavit or verification,
addressing whether Dr. Segarra possessed documents, materials, and/or information responsive to
the paragraphs of the Subpoena that he was ordered to produce.   *See id.* at Doc. 15, 17.   The next
day, Motley Rice, LLC ("Motley Rice") filed a motion to intervene and to object to the Segarra
Production Order.   (01-MD-875, Doc. 6404.)   On July 17, 2009,  Plaintiffs' filed a "Motion for
Extension of Time and or, Alternatively, Motion to Amend" the Court's Order (09-MC-103, Doc.
28),  and produced to Defendant what they described as "redacted medical-legal reports related to

---

[3] This Motion was joined in by Conoco Phillips Company and Oil Field Service and
Supply Company.  (09-63215, Docs. 12, 16.)

his review of all individuals, or records pertaining thereto, from January 2004 through June 2005,

together with a statistical analysis of those records[, all of which was] produced by Dr. Segarra  to

Union Carbide's lawyers in *Fairley v. Pulmosan Equipment Co.*, which was filed in the Circuit Court

of Mississippi."  (09-MC-103, Doc. 28.)

On July 28, 2009, Motley Rice filed an emergency  motion for a hearing and motion to stay

the Segarra Production Order.  (09-MC-103, Doc. 35.)  Three days later, the Court denied Plaintiff's

motion for an extension of time or an amendment of our Order without prejudice and

> [S]ubject to the more specific cataloguing of those documents called
> for in this Court's previous Order regarding Dr. Segarra's production
> of documents which are currently in existence and under his control;
> the parties' establishment of an agreed-upon protocol for the
> segregation of potentially privileged information; the consideration
> of the "Motley Rice Plaintiffs' Motion to Intervene and  Objections
> to the [Segarra production Order]" . . . and any future ruling
> concerning this Court's Order by Judge Robreno.

(09-MC-103, Doc. 38.)   Although the Court continued to conduct telephone conferences with the

Parties to develop a protocol for document production, we determined that we would "not require

the actual production of the documents in dispute to Defendant's while the objections of this Court's

Segarra Production Order are being considered by Judge Robreno."  (09-MC-103, Doc. 41); *see*  09-

MC-103, Docs. 39, 41, 43.[4]

On September 8, 2009,  the Court issued an Order setting out the protocol for production of

---

[4] On August 17, 2009, Plaintiff filed a motion to remand, (09-MC-103, Doc. 44), and a brief in support of the motion, (09-MC-103, Doc.45).  Breaking the 444 Oil Rig Cases into four categories, based on certain factual differences, Plaintiffs' claimed that this Court was without jurisdiction to hear any category of cases, and thus should remand all of them to Mississippi state court.  *Brief in Support of Plaintiffs' Motions* at 1 & n.1 (09-MC-103, Doc. 45).  On December 10, 2009, that motion was granted in part and denied in part by Judge Robreno, resulting in the remand of all but 25 of the over 400 oil rig cases.  (09-MC-103, Doc. 77.)

documents, which directed that an independent technical consultant ("ITC") was to assist the Court is segregating privileged documents from those to be produced pursuant to the Segarra Production Order.  (09-MC-103, Doc. 62.)  No action with respect to the document production protocol was taken in anticipation of Judge Robreno's decision on Motley Rice's motion to intervene and object to the Segarra Production Order.  (09-MC-103, Doc. 78.)

On February 2, 2010, Judge Robreno denied the Motley Rice's motion, but determined that any individual who could demonstrate "that they are entitled to the protections of [the consulting expert privilege] privilege" will be allowed to intervene, provided they re-file within 20 days of that order.  (*Id.*)  The period set out in Judge Robreno's Order passed without any potential intervening parties refiling with the Court, and a telephone conference was set up for March 15, 2010 to discuss Plaintiffs' pending motions to quash deposition notices filed by Defendant on February 16, 2010, (09-MC-103, Docs. 88, 89, 90), Defendant's Motion for Contempt, and the implementation of the Segarra Production Order.  (09-MC-103, Doc. 98.)  On the date of the scheduled conference, however, Plaintiffs' filed a motion to dismiss those cases involving Dr. Segarra's medical opinion with prejudice, citing that they "no longer desir[ed] to prosecute this case and claims as to any party, and each party shall bear their own court costs."  (09-MC-103, Docs. 99, 100.)

## III.   Discussion

Defendant contends that its Motion for Contempt provides a proper basis to impose attorneys' fees and costs against Dr. Segarra, his counsel, and Plaintiff's counsel as a remedy for civil contempt. (09-MC-103, Doc. 107) (citing Motion for Contempt at 34-36); *see* Motion for Contempt at 28-32.  In addition, Defendant asserts that sanctions may be imposed against Plaintiffs' counsel pursuant to 28 U.S.C. § 1927 as well as Federal Rule of Civil Procedure 37(b), and against

Dr. Segarra's counsel pursuant to 28 U.S.C. § 1927.  (09-MC-103, Doc. 107) (citing Motion for

Contempt at 34-36.)  Further, with its Response to Plaintiff's Motion to Dismiss and Motion for

Leave to File a Bill of Costs, Defendant asserts that attorneys' fees should be assessed and imposed

as a condition of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2).

### A.     Defendant's Motion for Contempt

#### 1.     Civil Contempt

A party seeking a civil contempt order must establish that "(1) a valid order existed, (2) the

[allegedly defiant individual] had knowledge of the order, and (3) [that he or she] disobeyed the

order." *Harris v. City of Philadelphia*, 47 F.3d 1342, 1349 (3d Cir. 1995).  These elements must be

proven by "clear and convincing" evidence and ambiguities must be resolves in favor of the party

charged with contempt. *See Robin Woods, Inc. v. Woods*, 28 F.3d 396, 398-99 (3d Cir. 1995).  Thus,

"[a] contempt citation should not be granted if 'there is ground to doubt the wrongfulness of' the

[party's] conduct." *Harris*, 47 F.3d at 1326 (citations omitted.)

Civil contempt may be imposed against non-parties.  Pursuant to Federal Rule of Civil

Procedure 45(e), "[t]he issuing court may hold in contempt *a person* who, having been served, fails

without adequate excuse to obey [a] subpoena." FED. R. CIV. PRO. 45(e) (emphasis added.)

Similarly, a non-party witness may be held in contempt for violating a court order, provided he or

she is given adequate notice and a hearing. *Marshak v. Treadwell*, 595 F.3d 478, 491-93 (3d Cir.

2009).  In addition, individuals who "abet[ the allegedly defiant individual] or [are] legally identified

with him[,]" may also be subject to contempt. *Quinter v. Volkswagon of America*, 676 F.2d 969, 972

(3d Cir. 1982) (citing *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d cir. 1930)).

Defendant asserts that the elements of civil contempt are met with respect to Dr. Segarra, a

non-party to this action, in that he has been aware of the valid orders of this court, but continually failed to comply with them.  (Motion for Contempt at 31.)   Specifically, Defendant contends that the documents Dr. Segarra turned over on July 17, 2009, as required by the Segarra Production Order, was a "sham" production that included only a small portion of the materials that are in his custody and control, considering his "present and former testimony and assertions[.]"[5]  (Motion for Contempt at 15-17, 18.)  Dr. Segarra argues that he is not in violation on the Order.

Under the Order Dr. Segarra was  to produce documents and materials responsive to paragraphs 1-2, 9, 11-12, 20-21, and 23 of the Subpoena, subject to limitation that: (1) the materials to be produced were to  relate to his screening or litigation practice; and that (2) "[s]uch production [would] not include, at this time, the records of any patient that Dr. Segarra saw as a 'consulting expert' within the meaning of Fed. R. Civ. P. 26(b)(4)(B)."  (09-MC-103, Doc. 2).  The second of these limitations was to be put into effect using a "Document Segregation Protocol" that would employ an independent technical consultant ("ITC") to assist the Court and interested parties in segregating responsive documents from those subject to the consulting expert privilege.

The development of this protocol came in response to Motley Rice's July 9, 2009 motion to intervene and object to the Segarra Production Order, (01-MD-875, Doc. 6404), as well as Plaintiffs'

---

[5] Defendant also appears to assert that Dr. Segarra violated Judge Robreno's February 24, 2009 Order, which required that he "produce all documents and information relating to diagnosing reports or opinions for Plaintiffs with claims currently pending in MDL 875 within 20 days." *Id.* at 158.  On March 5, 2009, however, Dr. Segarra filed a motion for additional time to comply with the Order.  (01-MD-875, Doc. 5833.)  Further, in response to challenges by Plaintiffs and Defendants, Judge Robreno determined that Defendants were required to file motions to compel in individual cases to secure Dr. Segarra's compliance with the Subpoena. (Order Den. Def.'s Mot. for Recons., May 29, 2009, 01-MD-875, Doc. 6275).  We therefore conclude that Dr. Segarra's responsibilities under the Subpoena were not triggered until the Court considered Defendant's renewed motion to compel and issued the Segarra Production Order in June of 2009.

July 17, 2009 motion for an extension of time or modification of the same, in which Plaintiffs' asserted that "Dr. Segarra is unable to comply with the Court's Order because  he has no way of knowing what reports are consulting expert reports and should be withheld as directed by the Court in the Order." (09-MC-103, Doc. 28.)  Although the Court denied Plaintiffs' motion on July 31, 2009, we made clear that certain requirements of the Segarra Production Order were subject to the "establishment of an agreed-upon protocol for the segregation of potentially privileged information" and Judge Robreno's consideration of the Motley Rice motion.  (09-MC-103, Doc. 38.)

We conclude that Dr. Segarra's failure to produce materials and documents responsive to the paragraphs of the Subpoena limited by the consulting expert privilege is not basis for civil contempt. While we understand Defendant's frustration, we cannot ignore that the Segarra Production Order touched upon potentially privileged materials and that Motley Rice's motion raised understandable questions regarding the extent to which non-parties might be impacted by Dr. Segarra's production of his screening and litigation documents.   As such, no documents responsive to an effected paragraph was to be turned over until the Court selected an ITC – an action which was delayed pending Judge Robreno's determination with respect to the Motley Rice motion.[6]  *See* 09-MC-103,

---

[6] Defendant contends that establishment of a protocol did not "exonerate or excuse" Dr. Segarra's failure to produce certain documents responsive to the paragraphs of the Subpoena subject to limitation by the consulting expert privilege.  (09-MC-103, Doc. 70 at 1-3.)  Among these documents, according to Defendant, are his "litigation and screening records as ordered by the Court and NOT objected to (i.e., all the positive B reads and diagnoses, billing records, correspondence, etc.)[.]"  (*Id.* at 3); *see also id.* at 1-2 (listing materials and documents "identified in the subpoena to which no objection was made").  We do not read the protocol so narrowly.  The Order setting out the protocol directed that "Dr. Segarra shall deliver to the ITC all documents responsive to the Segarra production, including paper documents, the ISYS database, floppy discs or other media (including alleged corrupted medial)." (09-MC-103, Doc. 62 at ¶ 5.)  Further, Dr. Segarra was not "required to produce documents relating to any individual who has asserted a consulting expert privilege unless and until it is so ordered by the
(continued...)

Doc. 62 (reflecting Court's September 8, 2009 Order setting out protocol and directing that Dr. Segarra shall deliver all responsive documents to the ITC ten days after the Court's selection of the ITC).

The Segarra Production Order, however, also directed Dr. Segarra to turn over materials responsive to Paragraph 8, 13-14, 18-19, and 26-27 of the Subpoena "in full." (09-MC-103, Doc. 2 at ¶ 3, ¶ 4.)   These directives were not limited by the consulting expert privilege and not subject to Motley Rice's objections to the Segarra Production Order, *see* 01-MD-875, Doc. 6404 at 4-7.   Of these portions of the Subpoena, Defendants Motion for Contempt concentrates upon paragraphs 14, 18, 26 and 27.   *See* Motion for Contempt at 25-27.

Paragraph 14 requested any documents "indicating [Dr. Segarra's] application for and/or certifications, licensing and/or registration of x-ray, pulmonary testing or screening equipment and/or screenings with any state or federal agency." (09-MC-103, Doc. 49, Ex. 1.)   In the affidavit Dr. Segarra submitted to Defendant on July 13, 2009, he asserted that he had no "responsive materials" to this Paragraph. (09-MC-103, Doc. 49, Ex. 5 at ¶ 8.)   Union Carbide challenges his assertion, noting that the position taken in his affidavit is "in direct contradiction to prior admissions and testimony of Segarra." (Motion for Contempt at 25.)   They specifically point to Dr. Segarra's response to Defendant's initial motion to compel on September 13, 2006, (01-MD-875, Doc. 4521),

---

[6](...continued)
Court[ and the] ITC shall produce *all other documents, at the direction of the Court, as promptly and expeditiously as possible after the segregation process is completed.*" (*Id.* at ¶ ) (emphasis added.)   We understand the protocol to have provided a procedure for Dr. Segarra's production of all material related to his screening and litigation practice that were responsive to paragraphs "1-2, 9, 11-12, 20, 21, and 23" of the Subpoena. *See* 09-MC-103, Doc. 2 at ¶ 2; *Transcript of Telephone Conference and Oral Argument*, (09-MC-103, Doc 66 at 7-14) (reflecting Court's rejection of narrow approach to protocol, in which only the "diagnostic materials" responsive to the relevant paragraphs of the Subpoena would be subject to segregation by the ITC.)

in which he addressed paragraph 14 of the Subpoena by stating that he "does not believe that he possesses any certifications for screening equipment[, but] can agree to produce his B-Reader Certificate, Internal Medicine Certificate, Pulmonary Certificate, and Critical Care Certificate." (01-MD-875, Doc. 4536 at 18.)  While we inclined to agree with Defendant that a serious question exists as to whether Dr. Segarra has information responsive to this request and failed to produce it in violation of the Order, we conclude that any apparent violation would be *de minimis* considering the nature of the material sought and in light of the wide-ranging scope of this Order.  We are unwilling in the exercise of our discretion to assess sanctions against Dr. Segarra on this asserted deficiency given all the circumstances related to this dispute.

Paragraph 18 of the Subpoena requested all documents relating to any "denials, notices of violations, revocations, rescissions, or suspensions of [his] certifications, authorizations, or licenses by any state or federal governmental entity, including but not limited to, any documents reflecting the imposition or issuance of fines, cease and desist orders, subpoenas to produce documents, or show cause orders." (09-MC-103, Doc. 49, Ex. 1.)  In his affidavit, Dr. Segarra asserted that he had no materials responsive to this request.  (09-MC-103, Doc. 49, Ex. 5 at ¶ 8.)  Defendant challenges this contention, pointing to Dr. Segarra's deposition testimony in a Texas state court case where he stated that he once responded to a "preliminary complaint regarding the public health implications of silicosis diagnostic practice," and a letter from Judge Sharon S. Armstrong of the Superior Court of Washington in connection with a summary judgment motion in October of 2002, which mentioned that he "performed examinations, rendered diagnoses, and recommended treatment without being licensed in Washington, a criminal offense." (Motion for Contempt at 26.)

We are unable to conclude that this evidence demonstrates that he has, or should have,

11

evidence in his custody and control that is responsive to paragraph 18. We are unconvinced, without more, that a "preliminary complaint regarding the public health implication of silicosis diagnosing practice" constitutes a denial, notice of violation, revocation, rescission, or suspension of any license, certification, or authorization held by Dr. Segarra. *See* 09-MC-103, Doc. 49, Ex. 1. Additionally, we do not consider Judge Armstrong's determination that she would not accept Dr. Segarra's medical opinion into evidence, based in part on the fact that he performed examinations and rendered diagnoses without a medical license in Washington, to be clearly responsive to Defendant's request. Indeed, it is unclear whether Judge Armstrong can be considered a "state or federal governmental entity" and her letter was not set out as a formal denial or notice of violation in connection with Dr. Segarra's certifications, authorizations or licenses. In that ambiguities must be resolved in favor of the party charged with contempt, we are unable to conclude Dr. Segarra violated the Court's order in this respect. *See Robin Woods, Inc. v. Woods*, 28 F.3d 396, 398-99 (3d Cir. 1995).

Paragraphs 26 and 27 requested "any descriptive research already produced to the Energy and Commerce Committee of the United States House of Representatives," including any analysis of the readings and diagnoses completed over the last two years, and "all information and documents that have been given or will be produced to the Unites States Congress." (09-MC-103, Doc. 49, Ex. 1.) Defendant contends that Dr Segarra has "provided no explanation for why he failed to produce all years included in his Congressional production" – specifically, the statistical analysis for 2003. (Motion for Contempt at 28); *See* 09-MC-103, Doc. 70 Ex. E (reflecting Dr. Segarra provided Congress with statistical analyses for 2003, 2004, and January through June of 2005). While we acknowledge that Dr. Segarra's July 17, 2009 production only included a subset of the materials he provided to Congress, we also note that Defendant attached to its reply brief as an exhibit, Dr.

Segarra's "Response to Congress," which appears to include the statistical information and analysis

he provided to Congress from 2003, 2004 and 2005.  *See* 09-MC-103, Doc. 70 at 4.

We consider it inappropriate to assess attorneys' fees and costs as a basis for this violation

of the Segarra Production Order.  It appears from our review of Dr. Segarra's deposition testimony

in the *Ragsdale* case, and the materials Defendant attached to its reply, that Defendants already

possess many, if not all, of the materials he claims to have provided to Congress.  *Compare Dep. of*

*Jay T. Segarra*, *Ragsdale v. Able Suppl Co.*, Case No. 2005-76615 at 76 *with* 09-MC-103, Doc. 70

Ex. E1-E3.  The record does not provide any clear indication as to whether Dr. Segarra

supplemented his submission to Congress after 2005 or whether the materials in Defendant's

possession are an incomplete or redacted version of his submission to Congress.  *See* 09-MC-103,

Doc. 70 at 4-5, 7-8 (noting that Dr. Segarra said in 2006 deposition he was in the process of updating

analyses he provided to Congress); *Telephonic Records Deposition of Jay T. Segarra*, 09-MC-103,

at 69-71 (July 23, 2009) (reflecting that a statistical summary was provided to Congress for the years

of 2003 through 2005, without underlying records, but providing no indication that further analyses

were provided past 2005.)  Without a clear picture of the specific prejudice Defendant suffered as

a result of Dr. Segarra's failure to produce in this respect, we are unwilling in the exercise of our

discretion to assess sanctions against Dr. Segarra.[7]  We also conclude that it would be inappropriate

to impose civil contempt sanctions upon either his counsel or Plaintiffs' counsel for aiding and

---

[7] Indeed, given that this case is to be dismissed with prejudice pending disposition of this Motion, any contempt sanction must be directed at compensating Defendant for unnecessary costs and fees expended in discovery, not at punishing Dr. Segarra or coercing his compliance with a court order.

abetting any alleged violation of this Order.[8]

### 2.   28 U.S.C. § 1927

Pursuant to 28 U.S.C. § 1927, a lawyer may be assessed for attorneys' fees and costs if: (1)

he or she multiplied the proceedings; (2) in an unreasonable and vexatious manner; (3) causing an

increase in litigation expenses. *Baker Industries, Inc. v. Cerverus. Ltd.*, 764 F.2d 204, 209 (3d Cir.

1985).  Courts should only invoke 28 U.S.C. § 1927, however, upon a finding of "wilful bad faith"

on the part of the offending attorney. *Ford v. Temple. Hosp.*, 790 F.2d 342, 346-47 (3d Cir. 1986)

(citation omitted.)  Bad faith is established where the attorney's conduct is "violative of recognized

standards in the conduct of litigation," not as a result of "misunderstanding, bad judgment, or well-

intentioned zeal." *Lasalle Nat. Bank v. First Connecticut Holding Group, LLC*, 287 F.3d 279, 289

(3d Cir. 2002); *see Ford*, 790 F.2d at 347 (stating an attorney's assertion of "a baseless contention"

for "an ulterior purpose, *e.g.*, harassment or delay" is an example of bad faith.)  The decision whether

to impose sanctions pursuant to 28 U.S.C. § 1927 is within the discretion of the district court. *In re*

*Orthopaedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 795 (3d Cir. 1999).

Defendant contends that they are entitled to the excess costs, expenses and attorneys' fees

---

[8] Defendant also assert that sanctions are warranted pursuant to Federal Rule of Civil Procedure 37(b)(2), which authorizes a court to impose reasonable expenses and attorneys' fees upon a party who fails to obey a discovery order. *See Moser v. Bascelli*, 879 F. Supp. 489, 493-94 (E.D. Pa. 1995).  Any assessment of fees and costs under this Rule, however, is dependant upon the failure of a party or witness to obey a court order.  To the extent we conclude that Dr. Segarra has not violated a discovery order of this court, Rule 37(b)(2) is inapplicable.  With respect to his technical violations of the Segarra Production Order, identified above, we consider an award of fee and costs pursuant to Rule 37(b)(2) inappropriate and unjust under the circumstances. *See* Fed. R. Civ. Pro. 37(b)(2)(C) (directing that Court must order disobedient party, the attorney advising that party, or both to pay reasonable expenses caused by the failure, "unless the failure was substantially justified or other circumstances make an award of expenses unjust.")

they incurred as a result of the "numerous measures to subvert and circumvent the discovery process" of Plaintiffs' counsel and Dr. Segarra's counsel, including "delaying production of critical documents, even those to which no objection to production was lodged; misrepresenting the existence, or rather lack thereof, of responsive materials; hiding documents behind bogus claims of privilege; and acting with flagrant disobedience of this Court's deadlines and orders[.]" (Motion for Contempt at 35.)

   With respect to Dr. Segarra's counsel, Defendant contends that he and Dr. Segarra made inconsistent statements and misrepresentations, "especially with respect to the destruction of responsive documents by Hurricane Katrina, and Segarra's willingness to produce his litigation screening materials." (Motion for Contempt at 34-35); *see id.* at 11-12.  It appears as though Defendant's main contention is that the "inconsistent" statements and misrepresentations regarding Hurricane Katrina were used as a delay tactic or as an excuse for Dr. Segarra's failure to produce. According to Plaintiffs' response, however,  Dr. Segarra's ability to produce responsive documents have been constrained by "concerns over patient privacy and the consulting expert privilege, as well as time and economic restraints[,]" not the destruction of documents by the hurricane.  *Plaintiffs' Response in Opposition to Motion for Contempt*, (09-MC-103, Doc. 68 at 9-10.)  We are unable to conclude that these statements, which we do not consider to be material misrepresentations or patently false statements,[9] were made in bad faith.  Additionally, at least with respect to those materials subject to the protocol, we do not accept that Dr. Segarra's counsel was multiplying the

---

   [9] *Compare* Motion to Compel at 23-25 (asserting that Dr. Segarra's statements regarding his billing records at his record deposition are belied by prior statements made in his response to Defendant's motion to compel in 2006) *with Plaintiffs' Response in Opposition to Motion for Contempt*, (09-MC-103, Doc. 68 at 10).

proceeding or otherwise deriding the court process by failing to produce.

As to Plaintiff's counsel, Defendant asserts that he delayed production when he directed Dr. Segarra shortly before July 8, 2009 – the initial production deadline set by the Segarra Production Order – to hold off on producing responsive documents "based on his subjective belief that 'issues' existed" with the Court's Order.   (Motion for Contempt at 34); *see Plaintiffs' Response in Opposition to Motion for Contempt*, (09-MC-103, Doc. 68 at 8-9.)  Plaintiffs' counsel admitted to the Court that he directed Dr. Segarra in this way, but claimed it was a mistake.   Further, while no objection or other issues existed with respect to the Segarra Production Order as of July 8, 2009, Motley Rice's motion to intervene and object was filed the next day. (01-MD-875, Doc. 6404.)  We are unable to conclude, without more, that Plaintiffs' counsel was acting in bad faith.  Even if we were to accept that such a finding was warranted, however, his instructions to Dr. Segarra did not unreasonably multiply the proceedings or directly result in significant litigation expenses for Defendants.   The immediate impact of his conduct was an amendment that only delayed Dr. Segarra's production obligations under the Order by only eleven days.  *See* 09-MC-103, Doc. 15.

Finally, Defendant contends that Plaintiffs' counsel attempted to remand the oil rig cases to avoid production and continues to hid behind "bogus claims of privilege." (Motion for Contempt at 35.)  We do not agree.  While it is true that this motion caused us to defer consideration of the broad question of alleged discovery abuses, it did in fact result in the remand of all but 25 of the more than 400 of these oil rig cases.  We do not consider Plaintiffs' counsel to have pursued this motion in bad faith.  (09-MC-103, Doc. 77); *see Ford*, 790 F.2d at 347.  Further, the development of the Segarra Production Order and consideration of the objections to it,  provided Dr. Segarra and Plaintiff's counsel reason to withhold from producing the categories of materials that may have included

16

documents subject to the consulting expert privilege until outstanding motion were resolved.  *See*

09-MC-103, Docs. 38, 41 (reflecting that Court did not require production under the Segarra

Production Order until protocol was develop and Judge Robreno resolved objections to the Order).

We, therefore, do not accept that Plaintiffs' counsel was "hiding documents behind bogus claims of

privilege" or "acting with fragrant disobedience of this Court's deadlines."[10]  (Motion for Contempt

at 35.)

**B.    Defendant's Response to Plaintiff's Motion to Dismiss and Motion for Leave to File a Bill of Costs**

As set out above, we have been unable to conclude that it would be appropriate to sanction

either Dr. Segarra, his personal counsel, or Plaintiffs' counsel for their conduct in the ongoing

Segarra discovery dispute.  We consider, however, Defendants request for the assessment of costs

---

[10] In their response to Plaintiffs' motion to dismiss, Defendant also contends that 28 U.S.C. § 1927 provides basis to sanction Plaintiffs' counsel for his unnecessary delay in dismissing the cases involving Dr. Segarra.  *Defendant Union Carbide Corporation's Combined Response to Motion to Dismiss*, (09-MC-103, Doc. 102 at 17.)  An attorney's assertion of a frivolous claim or continued pursuit of a claim after it becomes frivolous may provide basis to impose fees and costs under 28 U.S.C. § 1927.  *See Ford*, 790 F.2d at 349 (holding bad faith supported where plaintiff brings frivolous suit or continues to pursue a claim after it becomes frivolous); *Walter v. Fiorenzo*, 840 F.2d 427, 435 (7th Cir. 1988) (holding sanctions for filing a baseless claim may be imposed where those claims are unsupported by the facts); *Deretich v. St. Francis*, 650 F.Supp 645, 648 (D. Minn. 1986) (continued litigation after claim becomes frivolous is bad faith and basis for attorneys' fees and costs).  Additionally, even an attorney's pursuit of a colorable claim may warrant the assessment of fees and costs, provided the litigation is motivated by "vindictiveness, obduracy or *mala fides*."  *Campana v. Muir*, 615 F. Supp. 871, 875 (M.D. Pa. 1985).

We are not prepared to accept, at this time, that the underlying claims relying upon Dr. Segarra's opinion were frivolous or motivated by an improper purpose.  Thus, we do not consider the actions of Plaintiffs' counsel to warrant sanction under the specific requirements of 28 U.S.C. § 1927.  To the extent this argument is raised with respect to Dr. Segarra's counsel, we conclude that it is without merit for the same reasons.  We also note that assessment of costs and fees against the attorney for Dr. Segarra, who a not a party to this case, for delay in dismissing these cases seems inappropriate, given this decision was not in his control.

and fees associated with Plaintiffs' motion for dismissal to be a different matter.  As the procedural history of this case makes clear, Defendants have raised important questions about the conduct of Dr. Segarra and, in our view, have demonstrated – as set out in the Segarra Production Order –  that they would be entitled to more broad-based discovery than Plaintiffs' and Motley Rice think is appropriate if the cases were to proceed.  In this context we consider Defendant's Response to Plaintiffs' Motion to Dismiss and Motion for Leave to File a Bill of Costs.

Under Federal Rule of Civil Procedure 41(a)(2), a court may attach certain terms and conditions upon a plaintiff's dismissal, including reasonable attorneys' fees and costs.  *See Andrew Motor Designs, LLC v. Hassan*, 2006 WL 2251703 at *2 (E.D. Pa Aug. 4, 2006).  When dismissal is with prejudice, however, such relief will only be awarded in "exceptional circumstances." *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006); *see Hassan*, 2006 WL 2251703 at *2 (citing *Steinert* for this proposition).   We believe such "exception circumstances" exist in this case, in that Plaintiff's counsel abused the judicial process and acted in bad faith.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (holding Court has inherent power to assess attorney fees against counsel who abuse the judicial process by acting in bad faith, vexatiously, wantonly, or for oppressive reasons); *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978) (noting that award of attorneys' fees "vindicates judicial authority without resort to the more drastic sanctions available for contempt of court and makes the prevailing party whole for expenses caused by his opponent's obstinacy").

After the Segarra Production Order was issued in July 2009, at the direction of the Court, Defendant and Plaintiffs worked for over four months to develop a plan for document production that would go into effect once Plaintiffs' motion for remand and Motley Rice's motion to intervene and objection were finally decided.  Once time came for document production to occur and the Court

was to hold a telephone conference to resume discovery (09-MC-103, Doc. 98), Plaintiffs' counsel suddenly dismissed those cases involving Dr. Segarra's medical opinion, explaining that these individuals "no longer desired to prosecute[.]" (09-MC-103.)  The timing of Plaintiffs' motion and the explanation provided convince us that Plaintiffs' counsel was motivated to avoid impending discovery obligations.  As Justice Holmes has observed, "the character of every act depends upon the circumstances in which it is done." *Schenck v. U.S.*, 249 U.S. 47, 52 (1919).  The circumstances in which this act was done – the sudden and unexplained dismissal, which effectively nullified the substantial efforts undertaken by the Defendant and the Court to accomodate the various interests potentially impacted by the Segarra Production Order – guide us to our conclusion that an assessment of costs is proper.

Accordingly, we conclude that Plaintiffs' counsel shall be responsible for the costs and attorney's fees associated with Defendant's participation in the development of the protocol for document production.  *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-66 (1980) (holding fees and costs must be appropriately drawn to the conduct at issue).  Thus, we will grant Defendant's request for leave to file a bill of costs, but only as to the reasonable attorney's fees and costs associated with its preparation for, and participation in, telephone conferences regarding the development of the document segregation protocol, the drafting of proposed language for the order, and any other costs and fees reasonably connected to its role in assisting the Court and Plaintiffs in developing this mechanism for the discovery of Dr. Segarra's documents and materials.[11]

---

[11] We note that, as reflected in the above-cited authority, the Courts' inherent authority also provides a basis to impose attorneys' fee and costs in this case independent of Defendant's request that we impose sanctions as a condition of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2).  Further, the condition of dismissal imposed in this case essentially assumes

(continued...)

An appropriate Order will follow.

## III.   CONCLUSION

Defendant's Motion for Contempt provides no basis to assess attorneys' fees and costs against  Dr. Segarra, his counsel, or Plaintiffs' counsel in that we are unable to conclude that a discovery violation occurred warranting sanction in civil contempt or pursuant to Federal Rule of Civil Procedure 37(b)(2).  In addition, we do not consider the actions of either counsel to violate 28 U.S.C. § 1927.  We do conclude, however, that as a condition of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2), Plaintiffs' counsel shall be assessed the attorneys' fees and costs associated with Defendant's participation in the development of the document segregation protocol that was to be used to facilitate discovery of Dr. Segarra's litigation screening materials.

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

---

[11](...continued)
the character of an affirmative sanction. Whereas a plaintiff can generally withdraw his or her motion to dismiss if he or she is unsatisfied with a condition imposed by the court, *see Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 320 (5th Cir. 2002), the situation is different here in that the condition is directed at Plaintiffs' counsel.

**ATTACHED LIST OF CASES**

| Last Name | First Name | Mississippi State Dist Court Number | EDPA Docket No. |
|---|---|---|---|
| Brady | Clinton L. | 2006-407-CV11 | 5:08-cv-87071 |
| Broom | Harvey E. | 2006-519-CV11 | 5:08-cv-87069 |
| Bullock | Deloice | 2006-520-CV11 | 5:08-cv-87072 |
| Crawford | Joseph | 2006-394-CV11 | 5:08-cv-87080 |
| Curd | Patrick | 2006-525-CV11 | 5:08-cv-87083 |
| Daniels | Willie Lee | 2006-409-CV11 | 5:08-cv-87068 |
| Daughdrill | Dan Mack | 2006-526-CV11 | 5:08-cv-87081 |
| Dearman | Rolland | 2006-410-CV11 | 5:08-cv-87070 |
| Dixon | George D. | 2006-374-CV11 | 5:08-cv-87077 |
| Emler | Louie T. | 2006-464-CV11 | 5:08-cv-87084 |
| Faust | Johnny W. | 2006-90-CV3 | 5:08-cv-85894 |
| Herring (dec'd) | Henry A. | 2006-468-CV11 | 5:08-cv-87079 |
| Livingston | Daniel | 2006-94-CV3 | 5:08-cv-85987 |
| Lord, Sr. | Archie A. | 16-0056 | 5:08-cv-87030 |
| McPhail | Ralph T. | 2006-345-CV9 | 5:08-cv-87048 |
| Mounteer, Sr. | Eliel K. | 2006-555-V11 | 5:08-cv-87073 |
| Newsom | Joseph | 16-0018 | 5:08-cv-87076 |
| Newsom | Lonnie | 2006-414-CV11 | 5:08-cv-87031 |
| Piner | Ted L. | 2006-415-CV11 | 5:08-cv-87078 |
| Polk | Brandon Kaye | 2006-206-CV3 | 5:08-cv-85986 |
| Polk | Dale F. | 2006-85-CV3 | 5:08-cv-85985 |
| Rawls | Ray C. | 2006-417-CV11 | 5:08-cv-87075 |
| Smith (dec'd) | Cleophus | 2006-75 | 5:08-cv-87032 |
| Thomas | Tony N. | 2006-573-CV11 | 5:08-cv-87082 |
| Wallace | Terry | 2006-491-CV11 | 5:08-cv-87074 |